## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DESMOND ARNEZ CLARK,

       Petitioner,

                        Case No. 16-cv-13397

v.

                        HON. TERRENCE G. BERG

JEFFREY WOODS,

       Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY,
## AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Desmond Arnez Clark, who is presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his plea-based convictions for two counts of home invasion. For the reasons stated below, none of Petitioner's claims warrant habeas relief. Accordingly, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

# I. BACKGROUND

In 2014, Petitioner was charged with several crimes that occurred in Wayne County, Michigan. In case number 14-3139, Petitioner was charged with first-degree home invasion, receiving and concealing stolen property, and larceny in a building. *See* Wayne County Register of Actions, Case No. 14-003139-02-FH (Dkt. 12-1). In case number 14-3140, Petitioner was charged with second-degree home invasion, receiving and concealing stolen property, fleeing and alluding a police officer, and larceny in a building. *See* Wayne County Register of Actions, Case No. 14-003140-02-FH (Dkt. 12-2).

On March 9, 2015, Petitioner pleaded guilty in case number 14-3139 to one count of first-degree home invasion, *see* Mich. Comp. Laws § 750.110a(2), and in case number 14-3140, he pleaded guilty to one count of second-degree home invasion, *see* Mich. Comp. Laws § 750.110a(3). Petitioner admitted at the plea proceeding that, on March 31, 2014, he entered two houses without permission in Livonia, Michigan and took miscellaneous items from the houses. He also admitted that someone was present in one of the houses at the time he entered the house and

that he took items from both houses without intending to return them. *See* 3/9/15 Plea Tr., pp. 13-18 (Dkt. 12-5, Page ID 305-10).

In exchange for Petitioner's guilty plea on the two counts of home invasion, the prosecution agreed to dismiss the remaining counts in case numbers 14-3139 and 14-3140 and a third case charging Petitioner with home invasion. Additionally, as set forth in the transcript of the plea, the parties agreed that the sentence for first-degree home invasion in case number 14-3139 would be six to twenty years in prison, that the sentence for second-degree home invasion in case number 14-3140 would be six to fifteen years, and that the two sentences would run concurrently with each other. *See id.*, pp. 4-6. Petitioner stated that no one had promised him anything else or threatened him to induce him to enter a guilty plea. *See id.*, p. 13.

At Petitioner's sentencing on March 23, 2015, Petitioner requested that the pre-sentence report and the sentencing guidelines be modified to correct errors. He explained that the pre-sentence report incorrectly stated that he was earning $750.00 per hour when he was actually

making $7.50 per hour. *See* 3/23/15 Sentencing Tr., pp. 2-3 (Dkt. 12-6, Page ID 314-15).

As for the sentencing guidelines, the parties agreed that in both cases the score for offense variable nine ("OV-9") should be zero, not ten points. *See id.*, pp. 3-7. The change in the total score for the offense variables resulted in lower sentencing guidelines in both cases.[1] The revised sentencing guidelines for first-degree home invasion were reduced from a range of 72 to 120 months to a range of 57 to 95 months. *Id.*, p. 5; *see also* Sentencing Information Report (Dkt. 12-8, page ID 398). For second-degree home invasion, the guidelines were reduced from a minimum of 72 months to a range of 29 to 57 months. *See* 3/23/15 Sentencing Tr., pp. 7-8.

Pursuant to the parties' plea and sentencing agreement, the trial court sentenced Petitioner to six to twenty years in prison for first-degree home invasion, with credit for 357 days in jail. The court then sentenced Petitioner to a minimum sentence of 57 months (four years,

---

[1] In Michigan, the "sentencing guidelines . . . create a range within which the trial court must set the minimum sentence." *People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006). "The maximum sentence is not determined by the trial court, but rather is set by law." *Id.*

nine months) to a maximum of fifteen years in prison for second-degree

home invasion.[2]  The trial court also assessed fees and costs, including

$400 in attorney fees.  *See id.*, p. 13.

Petitioner applied for leave to appeal in the Michigan Court of

Appeals on grounds that:  (1) the change in the scoring of the sentencing

guidelines for first-degree home invasion required reconsideration of the

sentencing agreement or an opportunity to withdraw the guilty plea; (2)

the trial court abused its discretion by not correcting information in the

pre-sentence report; and (3) the court should have given him an

opportunity to contest enforcement of the assessment for attorney fees

based on his inability to pay the fees.  The Michigan Court of Appeals

denied leave to appeal "for lack of merit in the grounds presented."  *See*

*People v. Clark*, No. 329049 (Mich. Ct. App. Sept. 29, 2015).

In an application for leave to appeal in the Michigan Supreme

Court, Petitioner claimed that:  (1) the Michigan Court of Appeals

erroneously denied leave to appeal on the basis that he agreed to plead

---

[2]  The sentence for second-degree home invasion was less than what the parties
initially contemplated because the modified sentencing guidelines for that offense
(29 to 57 months) were lower than the initial sentencing agreement of 72 months.

guilty to a specific charge in exchange for a sentence within accurately scored guidelines range; (2) the Court of Appeals erred when it failed to grant leave to appeal or a remand to the trial court for an assessment of his ability to pay fees; (3) trial counsel was ineffective for failing to object to the incorrectly scored prior-record variables; and (4) he was entitled to a hearing on the score for offense variable 16, which was scored on the basis of judicially found facts. On May 2, 2016, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Clark*, 877 N.W.2d 886 (Mich. 2016).

Petitioner filed his habeas corpus petition on September 19, 2016. He argues that: (1) the plea agreement was breached when he was sentenced six to twenty years for first-degree home invasion, and the trial court relied on information which he did not admit and which was not decided by a jury; (2) the trial court abused its discretion by failing to correct the erroneous pre-sentence report; and (3) he was entitled to notice of the enforcement action on attorney fees and an opportunity to contest the enforcement action.

Respondent Jeffrey Woods urges the Court to deny the petition on grounds that Petitioner's claims lack merit or are not cognizable on habeas review. Respondent also points out that Petitioner did not exhaust state remedies for his second claim by raising that claim in both the Michigan Court of Appeals and the Michigan Supreme Court.

The exhaustion requirement is not jurisdictional, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and the Court may deny an application for a writ of habeas corpus on the merits despite the applicant's failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(2). Here, Petitioner's unexhausted second claim lacks merit. The Court, therefore, will proceed to address Petitioner's claims, rather than dismiss the petition under 28 U.S.C. § 2254(b)(1) for failure to exhaust state remedies.

## II.  LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Section 2254(d) "thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision . . . and then it must ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 71-72 (citing *Williams*, 529 U.S. at 405, 413); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)(noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court"). Further, " 'a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence.' " *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  ANALYSIS

#### A.  The Plea and Plea Agreement

##### 1.  The Alleged Breach of the Plea Agreement

In his first claim, Petitioner alleges that he pleaded guilty to first-degree home invasion on the basis that he would be sentenced at the low end of the sentencing guidelines.  Initially, the guidelines were calculated at 72 to 120 months (six to ten years) for first-degree home invasion.  At the sentence hearing, however, the guidelines for first-degree home invasion were re-calculated and reduced to a range of 57 to 95 months (four years, nine months to seven years, eleven months).  Despite the reduction in the sentencing guidelines, Petitioner was sentenced to a minimum of 72 months (six years) for first-degree home invasion.  As a result, Petitioner contends that his plea agreement was breached.

The clearly established Supreme Court case on breach of a plea agreement is *Santobello v. New York*, 404 U.S. 257 (1971).  In that case, the Supreme Court stated that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be

said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262.

Petitioner's claim that his plea agreement was breached lacks merit because the plea agreement, as articulated by the trial court at Petitioner's plea, called for a specific sentence of six to twenty years in prison for first-degree home invasion, and that is exactly what Petitioner received. Although the sentencing guidelines were reduced after Petitioner pleaded guilty and thus agreed to a minimum sentence of six years, the record does not support his claim that he was promised a sentence at the *bottom* of the guidelines. In fact, Petitioner stated in his brief before the Michigan Supreme Court that the plea agreement called for a sentence *within* the guidelines. *See* Application for Leave to Appeal, Mich. Sup. Ct. No. 152372 (Dkt. 12-8, Page ID 388).

Petitioner's minimum sentence of 72 months (six years) for first-degree home invasion was consistent with the terms of the parties' plea agreement, and it falls slightly below the midpoint of the modified sentencing guidelines of 57 to 95 months for that offense. The fact that the sentence fell within the modified sentencing guidelines could

explain why Petitioner's attorney did not object to the sentence for first-degree home invasion, following modification of the guidelines, even though she did object to the sentence for second-degree home invasion. *See* 3/23/15 Sentencing Tr., pp. 13-14. The sentence on Count 2, for second-degree home invasion, was 57 months (4 years, 9 months) to 15 years. The Court reduced the low-end of that sentence from the 6-year term contained in the plea agreement so that it was also within the modified guidelines of 29 to 57 months for that offense. *See* 3/23/15 Sentencing Tr., pp. 7-8.

The Court concludes that the plea bargain was not breached. Petitioner received the sentence that he bargained for, whether the agreement was for a fixed sentence of six to twenty years or a sentence within the guidelines. Thus, the state appellate court's rejection of Petitioner's claim for "lack of merit" was objectively reasonable.

## 2. *Apprendi, Alleyne,* and *Lockridge*

Petitioner also alleges as part of his first claim that the trial court sentenced him on information that he did not admit and that was not determined by a jury. In support of this claim, Petitioner relies on

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).  The Supreme Court held in *Apprendi*, that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  In *Alleyne*, the Supreme Court subsequently held: "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."  *Alleyne*, 570 U.S. at 103.

The Michigan Supreme Court has held that the rule from *Apprendi*, as extended by *Alleyne*,

> applies to Michigan's sentencing guidelines and renders them constitutionally deficient.  That deficiency is the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.

*People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original).

In the present case, the state trial court sentenced Petitioner pursuant to the parties' plea agreement. By agreeing to a specific sentence as part of his plea agreement, Petitioner waived his *Apprendi* and Sixth Amendment claim. *Amezcue v. Ochoa*, 577 F. App'x 699, 700-01 (9th Cir. 2014); *Carley v. Hudson*, 563 F. Supp. 2d 760, 763, 777-78 (N.D. Ohio 2008). His consent to the sentence vitiates his claim. *Amezcue*, 577 F. App'x at 601.

## B. The Pre-Sentence Information Report

Petitioner alleges next that the trial judge abused its discretion by failing to correct his pre-sentence information report. The report incorrectly stated that Petitioner was earning $750.00 an hour at his job, instead of $7.50 an hour. The report also showed a score of ten points for offense variable nine, even though the parties agreed that the proper score was zero.

At the sentence hearing, the trial court acknowledged the factual error in Petitioner's hourly wages and agreed to reduce the score for offense variable nine from ten points to zero. The court also adjusted the sentencing guidelines to reflect the change in the score for the

offense variables.  *See* 3/23/15 Sentence Tr., pp. 2-8 (Dkt. 12-5, Page ID

314-20); *see also* Sentencing Information Report (Dkt. 12-8, Page ID

398).  Thus, Petitioner's contention that the trial court failed to correct

the pre-sentence report is not supported by the record.  In fact, he

admits that the trial court crossed out the incorrect information on the

pre-sentence report and wrote the correct information over the incorrect

information.  *See* Brief in Support of Pet. for Writ of Habeas Corpus,

page 6 (Dkt. 1, Page ID 24).

Petitioner, nevertheless, maintains that the court should have

deleted the incorrect information, instead of merely crossing out the

incorrect information, because the incorrect information remains in the

report.  Petitioner also contends that incorrect information in his pre-

sentence report will affect his programming, placement, and security

level in prison and his eligibility for parole.

The Court finds no merit in Petitioner's claim because, even if he

were right that his pre-sentence report contains uncorrected

information, his claim is based entirely on state law, and the Court may

not grant the writ of habeas corpus "on the basis of a perceived error of

state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Furthermore, a pre-sentence report is meant to provide a court with information about the offense and other relevant matters, and "the mere presence of hearsay or inaccurate information in a [pre-sentence report] does not constitute a denial of due process." *Hili v. Sciarrotta*, 140 F.3d 210, 215-16 (2nd Cir. 1998). Thus, Petitioner is not entitled to habeas corpus relief concerning the pre-sentence report. If he is "detrimentally affected by the use of an inaccurate [pre-sentence report] in decisionmaking as to parole or the conditions of his incarceration, he should challenge such use in the parole proceedings or seek injunctive relief against the relevant parole or correctional officials." *Id*. at 216.

## C. The Assessment of Attorney Fees

In his third and final claim, Petitioner alleges that, due to his indigence, he cannot pay the $400 in attorney fees that the trial court ordered at sentencing. Petitioner states that funds are currently being deducted from his prison account, but that he lacks the ability to pay attorney fees and he was entitled under state law to notice of the

enforcement action and an opportunity to contest the assessment of fees.

Like his previous claim, Petitioner's challenge to the assessment of attorney fees is based solely on state law, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Petitioner's claim is not cognizable on habeas review for an additional reason: he is entitled to the writ of habeas corpus only if he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and generally, "fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim." *Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th Cir. 2013).

"For habeas purposes, it is difficult to distinguish . . . an order imposing attorney's fees from a fine or restitution order." *Id.* "[A] fee-repayment order falls outside of even 'the margins of habeas,' because it is 'not a serious restraint on . . . liberty as to warrant habeas relief.'" *Id.*

(quoting *Nelson v. Campbell*, 541 U.S. 637, 646 (2004), and *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984)).

Even if Petitioner's claim were cognizable here, the Supreme Court has determined that states may require a person convicted of a criminal offense to repay the costs of providing the person with effective representation of counsel if the person was indigent at the time of the criminal proceedings, but subsequently acquires the means to pay the costs of his or her legal defense. *See Fuller v. Oregon*, 417 U.S. 40 (1974). Therefore, to the extent Petitioner is objecting to the assessment of attorney fees, his claim lacks merit besides being not cognizable on habeas review.

## IV. CERTIFICATE OF APPEALABILITY

When a federal district court issues an adverse ruling on a habeas petition, the court "must issue or deny a certificate of appealability." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by

demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484.

Petitioner's claims lack merit for the reasons given above, and reasonable jurists would not find the Court's assessment of the claims debatable or wrong. Accordingly, Petitioner is denied a certificate of appealability. The Court nevertheless grants leave to appeal *in forma pauperis* because Petitioner was granted *in forma pauperis* status in this Court (Dkt. 7), and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

## V. CONCLUSION

Based on the foregoing, and because the state appellate court's rejection of Petitioner's claims for lack of merit was objectively reasonable, it is **ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**, and this case is hereby closed.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.

It is **FURTHER ORDERED** that *in forma pauperis* status on appeal is **GRANTED**.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: June 19, 2018

## Certificate of Service

I hereby certify that this Order was electronically submitted on June 19, 2018, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager